IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JERRY TOMLISON,**
    **et al.,**

    **Plaintiffs,**

vs.

    **Case No. C2-03-706**
    **Judge Edmund A. Sargus, Jr.**
    **Magistrate Judge Mark R. Abel**

**KROGER CO.,**
    **et al.,**

    **Defendants.**

## OPINION AND ORDER

Plaintiffs are former truck drivers who were employed by The Kroger Company ("Kroger") at a distribution warehouse located in the vicinity of Columbus, Ohio. During their employment with Kroger, Plaintiffs were represented by the International Brotherhood of Teamsters, Local Union No. 413 ("Local 413"). In August of 1998, Kroger subcontracted the transportation operations at the Columbus warehouse to Ruan Corporation ("Ruan"). Plaintiffs contend that, when Ruan took over the driving function in central Ohio area, they lost their positions with Kroger and are owed severance pay under the applicable Collective Bargaining Agreement ("CBA" or "Master Agreement"). Plaintiffs have brought a hybrid action against Kroger, Local 413, and the International Brotherhood of Teamsters ("IBT"), pursuant to Section 301 of the Labor Management Relation Act ("LMRA"). They allege that Kroger breached the CBA by failing to provide them their severance pay, and that the unions breached their duty of fair representation with respect to enforcnig the CBA and obtaining severance pay for them.

This matter is before the Court for consideration of Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23. Defendants oppose the Motion. For the reasons that follow, Plaintiffs' Motion for Class Certification is granted.

## I.

Because the background of this case has been set forth previously in detail, the Court will limit its recitation of the facts to the extent necessary to address the instant Motion for Class Certification. Procedurally, the Court has denied Defendants' Motions for Summary Judgment, finding that genuine issues of material fact remain as to, *inter alia*, whether Plaintiffs are barred by the statute of limitations and whether Plaintiffs exercised due diligence in their efforts to discover the acts constituting their claims.

There are eighty (80) individuals in the putative class. Sixty-two (62) putative members have already decided to participate in the lawsuit and have consented to be represented by Plaintiffs' class counsel. Plaintiffs, Jerry Tomlison, Richard Mourne, Terry Rankin and Al Chamberlin are the named Plaintiffs. All 80 of the former Kroger drivers are known and identified. The majority of the putative class live in the State of Ohio: only seven of the 80 potential class members live outside the State of Ohio.

In their Motion for Class Certification, Plaintiffs have defined the class generally as all former members of Local 413 who were employed as truck drivers for Kroger and did not receive severance pay under Kroger's Master Agreement with IBT and Local 413 when Kroger outsourced its driver operations to Ruan Corporation in August, 1998.[1] Plaintiffs have divided themselves into

---

[1] Although they question in a footnote whether this class is precisely defined, Defendants do not contend that the class definition fails to adequately identify the persons entitled to notice and relief. Plaintiffs, however, have not clearly articulated the exact definition of the class they wish to

three subclasses: (1) drivers who resigned before going to work for Ruan Corporation under the mistaken belief that they would otherwise lose certain retirement benefits; (2) drivers who worked for Ruan Corporation but terminated their positions before May 1, 1999 in order to preserve certain retirement benefits; and (3) drivers who continued working for Ruan Corporation after May 1, 1999 until the Kroger/Ruan contract expired. Plaintiffs have not identified the number of potential members from among the 80 who belong in each of these proposed subclasses.

## II.

Federal Rule of Civil Procedure 23(a) provides in full:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to demonstrating each of the four prerequisites of Rule 23(a), Plaintiffs must show that their class can be maintained under one of the three subcategories of Federal Rule of Civil Procedure 23(b). *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

The Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are

---

certify, or moved to create the subclasses they mention in their briefs. The Court concludes, nonetheless, for purposes of this Motion, that the class, as defined by Plaintiffs, is sufficiently precise at this juncture to serve the purposes of Rule 23. It identities the persons who would be entitled to relief and bound by any judgment. Plaintiffs have specified the particular group that was allegedly harmed during a particular time frame, in a particular location, in a particular way. Moreover, the class is sufficiently defined to facilitate the Court's ability to ascertain its membership in some objective manner. *See Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004); *Miller v. University of Cincinnati*, – F.R.D. __, 2006 WL 3591958, *3 (S.D. Ohio 2006). The Court, however, will defer final ruling as to the express definition of the class and, in particular, whether it will employ Rule 23(c)(4) to sever issues or create subclasses.

met. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The Court has broad discretion in determining whether to a particular case may proceed as a class action, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Falcon*, 457 U.S. at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701(1979)).

### III.

A.  **Rule 23(a) Prerequisites**

1.)  **Impracticability of Joinder - Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "'The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device.'" *In re American Med. Sys.*, 75 F.3d at 1079 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.01, at 3-4 (3d ed. 1992)(hereinafter "Newberg.")). "Impracticable," however, does not mean "impossible"; plaintiffs need only show that it is extremely difficult or inconvenient to join all the members of the class. *Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171, 175 (N.D. Ohio 1998). No precise number of plaintiffs will satisfy the numerosity requirement, and there is "no specific number below which class action relief is automatically precluded." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976).[2] Rather, the Court must examine the specific facts of each case in drawing its

---

[2] Although there are no rigid numerical tests for measuring whether joinder is impractical, some general guidelines have arisen from the case law: a class of fewer than 20 is usually insufficient; a class of more than 41 is usually sufficiently numerous; and classes within the range of 21 and 40 members are variously treated and may or may not meet the numerosity requirement. Vol. 5, *Moore's Federal Practice*, § 23.22[1][b] (3d ed. 2006).

-4-

conclusions as to whether joinder is impracticable. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *In re American Med. Sys*, 75 F.3d at 1079 (citation omitted).

In addition to the size of the putative class, the Court should consider other factors in determining whether joinder is impracticable, including judicial economy arising from avoidance of multiple actions, geographic dispersion of class members, size of individual claims, financial resources of class members, the ability of plaintiffs to institute individual lawsuits, and requests for prospective injunctive relief which would involve future class members. *American Med. Sys.*, at 1079 (citing 1 Newberg, § 3:6).

In this case, as many as 80 potential class members exist, 62 of whom have already agreed to participate. Their identities and addresses are readily ascertainable. Certainly, joinder is more practical when parties are clearly identifiable, easily accessible and residing in a geographically-compact area. *See, e.g., Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). Yet, the size of this group is substantial. While it is possible to bring 80 separate lawsuits, this alternative is neither desirable, nor practical.

Moreover, considerations of judicial economy weigh in favor of class certification. The inconvenience of joining all 80 of the potential class members pales in comparison to the actual and practical difficulties of separate trials. Joinder of all class members and their claims into one proceeding would be less expensive and less time consuming than multiple suits.

Further, joinder is likely to be impracticable because of the individual resources of each of the class members. The members of this prospective class are all truck drivers who claim they are

due severance pay based upon their termination from Kroger. Plaintiffs speculate, based on the single award already given to Paul Smith, that their respective damages are approximately $10,000 with some variation for seniority of each driver. While these claims involve more than a small amount of damages, the members do not have such a considerably large financial stake in the dispute that they would likely pursue individual claims, when measured against the cost of pursuing their own federal cases.

The Court concludes that joinder of all class members would not be impossible, but it would be impracticable. Plaintiffs have demonstrated the requisite degree of numerosity based on both the absolute number of members included in the class as well as other circumstances, including judicial economy, financial resources of the class and the claimants' ability and/or motivation to pursue individual law suits.

2.  **Common Questions of Law and Fact - Commonality**

Rule 23(a)(2) requires that there be questions of law or fact common to the class. The commonality requirement serves the purposes of promoting fair and adequate representation of the absentee-class members' interests and efficient case management. *Falcon*, 457 U.S. at 157 n.13 (commonality serves as guidepost as to whether class action is economical and whether absentee members will be fairly represented). The commonality requirement may be satisfied if the class shares even one common question of law or fact. "Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class-though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (quoting *Sprague v. General Motors*, 133 F.3d 388, 397 (6th Cir. 1998)). Because the commonality requirement may be satisfied if the class shares only a

single common question of law or fact, it has been "characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Plaintiffs contend that the class shares numerous, common questions of law and fact, including the following:

(1) Did Kroger terminate its drivers under the terms of the Master Agreement it had with the IBT, and if so, on what date was notice provided?

(2) If so, did such a termination trigger the severance provisions of the Master Agreement?

(3) Did Kroger breach the Master Agreement by failing to pay severance to the Columbus drivers, including plaintiffs?

(4) Did IBT have a duty of fair representation as to these members of Local 413?

(5) Did the Local 413 management have a duty to ensure that Paul Smith's grievance was processed in such a way that it would benefit all affected members?

(6) Did the assurances of George Saunders to the Columbus drivers that the issue of severance was being addressed constitute a breach of the Local 413's duty of fair representation?

In an effort to cast the Plaintiffs' claims as diverse, Defendants emphasize that each class member will have to offer evidence about his particular circumstances and reasons for not seeking severance pay for himself.[3] Factual differences in the members' claims, however, do not necessarily preclude a finding that the class has requisite commonality. So long as resolution of the common issues will advance the litigation, the commonality requirement is met. *Sprague*, 133 F.3d at 397. Although the Court recognizes that each Plaintiff may have differentiated circumstances which will require individualized determinations, the course of conduct giving rise to the causes of action

---

[3] The bulk of Defendants' assertions in this regard are raised with respect to Plaintiffs' claim under Rule 23(b)(3) that common issues of law and fact predominate over individualized issues. The Court, therefore, further addresses Defendants' contentions regarding commonality as it relates to whether such issues predominate below.

affects all class members. The Court therefore finds, consistent with Rule 23(a)(2), that there are questions of law or fact common to the class.

### 3. Representatives' Claims Typical of Class - Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This component of Rule 23 assures that the named representatives' interests align with those of the class. *American Medical Sys.*, 75 F.3rd at 1082. A named plaintiff's claim is considered to be typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* The claims of the named plaintiffs and the absent members must be typical, not identical or homogeneous. *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992). "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)(quoting *Sprague*, 133 F.3d at 399).

The Court concludes that there are no definitive differences between class representatives' claims and those of the other putative members' claims. The requirement of typicality is not onerous. If there is a strong similarity of legal theories, the requirement is met, even if there are factual distinctions among named and absent class members. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884-85 (6th Cir. 1997). In this case, both the proposed class representatives and the remaining putative class members were separated from Kroger as drivers; they did not receive severance pay; and they occupy the same status with regard to the Paul Smith grievance. Among other typical claims, Plaintiffs must demonstrate that Kroger terminated its drivers under the terms

of the Master Agreement, and that the termination triggered the severance provisions of the Master Agreement. Plaintiffs must demonstrate that Local 413 had a duty to ensure that Paul Smith's grievance was processed in a manner consistent with the union's duty of fair representation. Typicality is established here in that a named plaintiff who proves his own claim would prove the other members' claims, subject to individualized fact-based defenses.

### 4. Fairness and Adequacy of Representatives - Adequacy

Pursuant to Rule 23(a)(4), a class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *American Medical Sys.*, 75 F.3d at 1083. The Sixth Circuit articulated two criteria for measuring adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* (citing *Senter*, 532 F.2d at 525; *Falcon*, 457 U.S. at 157 n. 13 ("adequacy of representation requirement ... also raises concerns about the competency of class counsel and conflicts of interest")). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* The adequacy of representation requirement is usually satisfied if the commonality and typicality requirements are met. *Dalesandro v. International Paper Co.*, 214 F.R.D. 473, 483 (S.D. Ohio 2003)(citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997)).

The Court finds both required criteria are present in this case. First, the named Plaintiffs have a common interest with the class in being compensated for their alleged common injury, that is, not

receiving severance benefits. Moreover, the question of whether the named plaintiffs discovered that the Unions were not pursuing severance on their behalf prior to February 6, 2003 is common to all Plaintiffs, although each involves different proofs.

The named Plaintiffs have, thus far, aggressively pursued the claims on behalf of the class. Counsel has also vigorously and aptly prosecuted the case on behalf of the class. The Court has no reason to question counsel's representation. Because the named Plaintiffs and counsel have demonstrated an ability to vigorously pursue the claims of the class, and no conflict of interest or antagonism exists between the parties, the Court finds the named Plaintiffs will fairly and adequately protect the interests of the Class.

## B.  Certification Under Rule 23(b)[4]

In order to certify a class under Rule 23(b)(3), Plaintiffs must show both that (1) common issues of law and fact predominate over individualized issues; and (2) a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "parallels subdivision (a)(2) [commonality] in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *American Medical Sys.*, 75 F.3d at 1084. Under the terms of the Rule:

---

[4] Plaintiffs originally sought certification as a Rule 23(b)(1) class, asserting that the prosecution of separate actions would prejudice its members. Following Defendants' Memorandum in Opposition, Plaintiffs filed their Reply and abandoned their theory that certification under Rule 23(b)(1) was appropriate. Plaintiffs sought instead to achieve class status under Rule 23(b)(3), asserting that common issue predominate in the case, such that a class action is the superior method of adjudication of their numerous claims. Defendants object to the re-designation and assert that Plaintiffs waived their request under Rule 23(b)(3) because of their failure to raise this contention in their opening briefs. The Court, however, has permitted Defendants to file a Sur-Reply addressing Plaintiffs' new arguments under Rule 23(b)(3). Given Defendants in-depth analysis of the law and extensive application of it to the facts of this case, the Court finds no prejudice to Defendants in permitting Plaintiffs to pursue their alternative theory for class certification.

> The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating ( the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants devote the majority of their briefs to the contention that the presence of statute-of-limitations issues preclude a finding of predominance. Admittedly, matters related to the accrual of the statute of limitations are not readily susceptible to class-wide determination. "'Examination of whether a particular plaintiff possessed sufficient information such that he knew or should have known about his cause of action will generally require individual examination of testimony from each particular plaintiff to determine what he knew and when he knew it.'" *Thorn v. Jefferson-Pilot Life Ins.*, 445 F.3d 311, 321 (4th Cir. 2006)(quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998)). The Court notes, however, that the very timeliness issues Defendants interject, including the statute-of-limitations defense and matters of equitable tolling, are common to all class members.[5]

The potential individual questions raised by the application of the limitations defense do not preclude a finding that the common issues of fact and law predominate. *See* 1 Newberg § 4.26, at 4-105-06 (stating that challenges to predominance based on "the presence of affirmative defenses against various class members . . . will not usually bar a finding of predominance of common

---

[5] Even though the defense of statute of limitations appears to be a significant issue in this case, the Court nonetheless concludes that the class action is the superior procedural device for adjudicating the claims and that Defendants' arguments as they relate to individual members of the class in terms of reliance and due diligence in discovering their claims may be addressed through the Court's authority under Rule 23(d) to regulate the conduct of the case.

issues"). While the necessity for individualized statute-of-limitations determinations weighs against class certification under Rule 23(b)(3), the presence of such issues does not automatic undermine the predominance factor. The fact that such idiosyncratic concerns may arise and may affect class members differently does not compel a finding that individual issues predominate over common ones. As long as a sufficient common issues bind class members, variations in the application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3). *See Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)(rejecting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir.1998)).[6] Indeed, in this case, the limitations and tolling issues serve to bind the class with yet another common question, although requiring individualized proof, and do not preclude a finding of predominance. Thus, the Court concludes that the common issues of law and fact predominate over individualized issues.

Moreover, the Court concludes that the class action is the superior to other methods of litigating the case. From a case management perspective, the class action device is far more efficient than 80 individualized trials. The Court notes that a single forum for concentrating all the claims is more desirable than individual cases. The majority of witnesses and potential class members are located in the State of Ohio. The Court already has addressed the fact that the individual-damages claim of each Plaintiff is not so large as to create a presumption that the class members have an interest in separate litigation. Moreover, Plaintiffs' damages, if proved, are readily calculable by reference to the Master Agreement, with adjustments for seniority. Further, that more than two-

---

[6] As suggested in *Mowbray*, a securities-fraud case, the generic requirements of predominance under the Rule 23(b)(3) do not vary with the type of claim asserted. The court noted that "courts confronting a collocation of divergent limitations defenses regularly apply the totality-of-the-circumstances test not only in security fraud cases but also in other types of Rule 23(b)(3) class actions." 208 F.3d at 297.

thirds of the members have already agreed to join the class suggests that they are not interested in pursuing individual lawsuits. Indeed, no other class member has initiated separate litigation. None of the members has opposed certification and none has expressed an interest in opting out. These facts weigh in favor of finding that the members have no interest in controlling their own separate case.

Finally, the Court finds, as a matter of its discretion, that the class action device is the best method by which this case may be managed. Although the matter has been thoroughly briefed by Defendants, the Court finds no insurmountable burden to managing the case as a class action and concludes that it is superior to other methods of adjudicating the controversy.

## IV.

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. # 80 ) is **GRANTED**. This case is hereby scheduled for a **STATUS CONFERENCE on June 5, 2007 at 2:00 P.M.** Prior to the conference, the parties shall consult regarding scheduling issues and methods by which the issues remaining should go forward. Seven (7) days before the conference, the parties shall submit a joint proposal or, in the absence of agreement, separate proposals. The Court withholds final definition of the class prior to the conference.

**IT IS SO ORDERED.**

3-30-2007
DATED

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE